[No. A036062. First Dist., Div. Two. Mar. 23, 1988.]

BARBARA J. HOLLAND, Plaintiff v.
JAMES F. THACHER et al., Defendants, Cross-complainants and
Appellants;
ARCHIBALD M. MULL III et al., Cross-defendants and
Respondents.

COUNSEL

Rogers, Joseph, O'Donnell & Quinn, Joseph W. Rogers, Jr., William B. Chapman, Susan M. Popik, Margaret A. Corrigan, Miller & Miller and Baron L. Miller for Defendants, Cross-complainants and Appellants.

Ronald E. Mallen, Mark Simon Kannett and Long & Levit for Cross-defendants and Respondents.

OPINION

KLINE, P. J.—

INTRODUCTION

The issue we confront in this case is whether predecessor attorneys sued for malpractice by a former client may cross-complain for equitable indemnity against a successor attorney hired to extricate the client from the condition created by the predecessor attorneys. We agree with the majority of appellate courts which have addressed the issue that sound policy reasons prohibit such cross-complaints.

STATEMENT OF THE CASE/FACTS

Defendant-attorneys James F. Thacher, James E. Ratcliff, Jr. and their law firm, Thacher, Jones, Casey & Ratcliff (Thacher) and defendant-attorney Alfred M. Miller (Miller) appeal the order of the trial court sustaining without leave to amend demurrers to cross-complaints asserted by

them against attorneys Archibald M. Mull III, Edwin J. Bouillon, Edward L. McCarthy, and their law firm, Mull & McCarthy (Mull).[1]

Plaintiff Barbara J. Holland sued defendants Miller and Thacher for professional negligence and fraud in their representation of her in connection with the dissolution of her marriage. Holland engaged Thacher in 1977 to provide her with legal advice and assistance with respect to the breakup of her marriage. In mid-February 1978, Holland terminated Thacher and retained Miller and Attorney Charles Lane and the firm Schwartz & Lane to represent her in a dissolution proceeding which Miller filed on her behalf on February 21, 1978. Final judgment was entered in the dissolution in late 1978, but the issues related to division of the community property were bifurcated for later trial. During the ensuing three and one-half years, Miller and Lane continued to represent Holland in the dissolution proceeding and in four actions brought against her by creditors of the Hollands' community property companies on defaulted loans which Holland had personally guaranteed.

In August 1982, Holland substituted Attorney Mull for Miller and Lane as counsel of record in the various pending lawsuits. In December 1983, with Mull's advice and assistance, Holland entered into a marital settlement agreement settling the dissolution action and compromising all property rights and interests disputed between and among Holland, her former husband, and his new wife. This agreement contained no provision for division of subsequently discovered community assets. Concurrent with his representation of Holland in the dissolution proceeding, Mull filed the instant legal malpractice action on behalf of Holland against Thacher, Miller and Lane. By this action Holland seeks to recover damages for the alleged failures of her former attorneys to protect her interests in community property allegedly concealed and dissipated by her former husband.

Miller and Thacher filed cross-complaints against Mull for equitable indemnity in the legal malpractice action, contending that Mull failed to

---

[1] As a threshold matter, we note that "[a]n order sustaining a demurrer is not appealable. The appeal must come from an order dismissing the complaint. (Code Civ. Proc., § 904.1, *Beazell* v. *Schrader* (1962) 205 Cal.App.2d 673, 674 . . . .)" (*Munoz* v. *Davis* (1983) 141 Cal.App.3d 420, 431 [190 Cal.Rptr. 400].) It does not appear from the record on appeal that a judgment or order of dismissal has been entered on the cross-complaints. The case has been fully briefed and argued by both sides and to dismiss the appeal at this stage "would be a waste of judicial and litigant resources. Therefore, in the interests of justice and to prevent unnecessary delay we will deem the order sustaining the demurrer to incorporate a judgment of dismissal and treat appellant's notice of appeal as applying to the dismissal. (*California State Employees' Assn.* v. *State of California* (1973) 32 Cal.App.3d 103, 106, fn. 1 . . . .)" (*Munoz* v. *Davis, supra,* at p. 431.) Accordingly, the order sustaining the demurrers without leave to amend is modified by adding thereto the following sentence: "The cross-complaints are dismissed."

pursue assets allegedly secreted by Holland's former husband and that in settling, Mull caused or exacerbated the damages plaintiff seeks to recover in her malpractice complaint against Miller and Thacher. Mull demurred to Miller's cross-complaint and, by stipulation, did not respond to it pending hearing on Mull's demurrer to Miller's pleading. On April 14, 1986, Mull's demurrer was sustained with leave to amend within 20 days "to allege sufficient facts to attempt to bring case under the doctrine of *Parker* v. *Morton* [(1981) 117 Cal.App 3d 751 (173 Cal.Rptr. 197)]."

Thereafter, both Miller and Thacher filed amended cross-complaints for indemnity against Mull. Mull demurred to both. On July 2, 1986, the demurrers were sustained without leave to amend, the court stating: "I've read both the *Parker* case and the *Goldfisher* [*Goldfisher* v. *Superior Court* (1982) 133 Cal.App.3d 12 (183 Cal.Rptr. 609)] case. I'm aware of the fact that the previous ruling was inconsistent with the court's present finding because I propose to sustain the demurrer without leave to amend and let somebody else decide this; and based upon the cases, I think it's a question of public policy as to whether or not the cross-complaints should be allowed, and I'm going to go with the *Goldfisher* case."

DISCUSSION

I.

*Standard of Review*

On appeal, the cross-complainant bears the burden of demonstrating either that the demurrer was sustained erroneously or that sustaining the demurrer without leave to amend was an abuse of discretion. (*Pollack* v. *Lytle* (1981) 120 Cal.App.3d 931, 939 [175 Cal.Rptr. 81]; *Stanson* v. *Brown* (1975) 49 Cal.App.3d 812, 814 [122 Cal.Rptr. 862].) It is error to sustain a demurrer where a plaintiff has stated a cause of action under any possible legal theory. (See *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817]; *McDonald* v. *Superior Court* (1986) 180 Cal.App.3d 297, 303 [225 Cal.Rptr. 394].) In assessing the sufficiency of a demurrer, all material facts pleaded in the complaint and those which arise by reasonable implication, must be deemed true. (See *Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865]; *Pollack* v. *Lytle, supra,* 120 Cal.App.3d 931, 939-940.)

## II.

*Whether Public Policy Considerations Preclude Cross-complaints for Indemnity Between Attorneys*

■    Under ordinary principles of tort law, a tortfeasor who may be held liable for all injuries proximately caused by his or her negligence, including those which result from subsequent negligence, may cross-claim for indemnity against any subsequent tortfeasor whose negligence has exacerbated the original injury. (*American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 591-598 [146 Cal.Rptr. 182, 578 P.2d 899]; *Parker* v. *Morton* (1981) 117 Cal.App.3d 751, 756 [173 Cal.Rptr. 197].) "This rule derives from several well-recognized legal principles all of which foster the public policy of encouraging persons to conduct themselves with reasonable care: that every person should be responsible for the consequences of his negligent conduct [citations]; that as between tortfeasors who contribute to a loss each shall bear the loss in proportion to his fault [citations]; and that an injured person must himself take reasonable action to mitigate his damages [citations]." (*Parker* v. *Morton, supra,* 117 Cal.App.3d at p. 756.)

■    We must decide whether the same general principles apply where an attorney sued for malpractice by a former client cross-complains for indemnity against the successor attorney hired to assist the client in limiting the injury caused by the original attorney. We do not act in a vacuum. The problem is a recurring one. The clear weight of judicial authority prohibits the first attorney from cross-claiming for indemnity against the successor attorney. (*Goldfisher* v. *Superior Court* (1982) 133 Cal.App.3d 12, 15 [183 Cal.Rptr. 609]; *Gibson, Dunn & Crutcher* v. *Superior Court* (1979) 94 Cal.App.3d 347 [156 Cal.Rptr. 326]; *Rowell* v. *TransPacific Life Ins. Co.* (1979) 94 Cal.App.3d 818 [156 Cal.Rptr. 679]; *Commercial Standard Title Co.* v. *Superior Court* (1979) 92 Cal.App.3d 934 [155 Cal.Rptr. 393]; see *Held* v. *Arant* (1977) 67 Cal.App.3d 748 [134 Cal.Rptr. 422]; but see *Parker* v. *Morton, supra,* 117 Cal.App.3d at p. 767.) Although Courts of Appeal generally disfavor this type of action, they have differed between districts and among members of the same panel, on the conditions, if any, which might warrant such cross-complaints.

■    To begin with, it must be remembered that disallowing such actions imposes no burden on the predecessor attorney. ■    Through the assertion of an affirmative defense the former attorney is still able to reduce his or her own exposure by the extent of the successor attorney's responsibility for the client's injury. As Thacher and Miller point out, principles of agency permit the successor attorney's negligence to be imputed to the client-plaintiff to reduce his or her recovery through application of compar-

ative fault principles. (See *Rowell* v. *TransPacific Life Ins. Co.*, *supra*, 94 Cal.App.3d 818, 821; see also *California Casualty Gen. Ins. Co.* v. *Superior Court* (1985) 173 Cal.App.3d 274, 279, 281-282 [218 Cal.Rptr. 817].) However, because a successful affirmative defense would reduce the client-plaintiff's recovery, cross-complaints have a superficial appeal.

We are persuaded that the apparent benefit of allowing cross-complaints must give way to the sound public policy reasons enunciated in those cases supporting the majority rule forbidding them. Underlying the various formulations of the policy rationale is the concern that a cross-complaint for indemnity might adversely affect the relationship between the client and the successor attorney. Furthermore, as the predecessor attorney can seek protection from liability by asserting an affirmative defense, "inherent" in the additional cross-complaint option are "the seeds of irresponsible cross-lawsuits motivated by naught but spite and a desire to spread confusion, dissention [*sic*] in the opponent's camp." (*Commercial Standard Title Co.* v. *Superior Court*, *supra*, 92 Cal.App.3d at p. 945.)

The concern about the negative effects on the attorney-client relationship has been variously expressed. Lawsuits between the successive attorneys of a client may engender conflict that will preclude or discourage the successor lawyer from participating in the case. (See *Comden* v. *Superior Court* (1978) 20 Cal.3d 906 [145 Cal.Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562].) Several courts have observed that the allowance of cross-complaints would frequently result in the plaintiff's lawyer feeling he or she can no longer participate in the litigation. (*Gibson, Dunn & Crutcher* v. *Superior Court*, *supra*, 94 Cal.App.3d at p. 352; *Parker* v. *Morton*, *supra*, 117 Cal.App.3d at p. 766; *Commercial Standard Title Co.* v. *Superior Court*, *supra*, 92 Cal.App.3d at p. 945.) "Depriving a party of the lawyer of his [or her] choice, who is also the lawyer most familiar with the background of the case, is a serious matter . . . ." (*Gibson, Dunn & Crutcher* v. *Superior Court*, *supra*, 94 Cal.App.3d at p. 352.) Though this may not be a controlling consideration, we can envision situations in which the problems presented by a potential cross-complaint from the the former attorney might make it hard for the client to find a competent replacement.

A successor attorney confronted with a cross-complaint might feel disinclined to take the case, or compelled to drop out, because the attorney-client privilege could seriously interfere with an effective defense. In all likelihood, much of the information relevant to the successor attorney's defense derives from the representation of the client. Thus, if cross-complaints were allowed, the successor attorney would be unable to use privileged information gained in the course of the professional relationship with the client to defend himself or herself unless the client waived the attorney-client privi-

lege. The only "solution" to this problem that has been proposed is to put the client to an election "either to waive the privilege or assume responsibility in the present suit (on an imputed negligence theory) for any judgment against Lawyer II." (Braun, *Gibson, Dunn & Crutcher* v. *Superior Court Revisited* (1982) 22 Santa Clara L.Rev. 1, 26, fn. 68.) The difficulty with this theory is that the attorney-client privilege, which is a creature of statute (Evid. Code, § 954), cannot be judicially modified. As has been noted, "the area of privilege 'is one of the few instances where the Evidence Code precludes the courts from elaborating upon the statutory scheme.' (Evid. Code, § 911, Cal. Law Revision Com. comment.)" (*Dickerson* v. *Superior Court* (1982) 135 Cal.App.3d 93, 99 [185 Cal.Rptr. 97].) The Legislature, which possesses sole authority to effectuate the proposed solution, has not done so.

By disallowing cross-complaints by former attorneys, a successor attorney who has exacerbated or failed to mitigate damages caused by a predecessor will be held liable only if the client sues both the negligent attorneys. In that event, the successor lawyer would be free to use the privileged information because of the waiver of privilege inherent in a suit brought by a client alleging breach of a duty arising out of the lawyer-client relationship. (Evid. Code, § 958.)

The discovery problem created by the attorney-client privilege would also be presented, it is true, if the predecessor attorney raised the issue of the successor attorney's comparative negligence by way of affirmative defense. In this event, however, the client would have a greater incentive to waive the privilege. By refusing to do so, the client would restrict the successor attorney's ability to respond to the affirmative defense, and therefore, run the risk of reducing the ultimate recovery against the predecessor attorney.

Even if the successor attorney's concern over a potential exposure to cross-complaint did not dissuade him or her from further participation in the client's case, courts recognize that there still may be considerable tension. It could be difficult for the new attorney to have "undivided loyalty" to the client if faced with potential liability to one of the client's adversaries, the former attorney. (*Held* v. *Arant, supra,* 67 Cal.App.3d 748, 752.) "[T]o expose the attorney to actions for negligence brought by parties other than the client, 'would inject undesirable self-protective reservations into the attorney's counselling role' and tend to divert the attorney from single-minded devotion to his client's interests." (*Gibson, Dunn & Crutcher* v. *Superior Court, supra,* 94 Cal.App.3d at p. 353, quoting *Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 344 [134 Cal.Rptr. 375, 556 P.2d 737].) These cross-complaints place " ' "an undue burden on the profession" [citation]

and [diminish] the quality of the legal services received by the client.'" (*Ibid.,* quoting *ibid.*)

Thacher and Miller counter these concerns with several arguments. First, they claim that if the successor lawyer fully performs his duty to his client he need not fear cross-complaint for indemnity. They find support in the dissent in *Gibson, Dunn* and, to a limited extent, the majority in *Parker* v. *Morton, supra,* 117 Cal.App.3d 751, both of which questioned the premise that allowing cross-complaints for indemnity against the successor attorney would threaten the attorney-client relationship by diminishing the attorney's complete loyalty to the client. (*Parker* v. *Morton, supra,* at p. 755, fn. 1; *Gibson, Dunn & Crutcher, supra,* at pp. 359-360 [dis. opn. of Jefferson, J.]; see also conc. and dis. opn. of Cologne, Acting P. J., in *Commercial Standard Title Co.* v. *Superior Court, supra,* 92 Cal.App.3d at p. 949.)

The majority in *Gibson, Dunn* directly confronted and rejected these contentions: "[The vice of the cross-complaint] is not that lawyer II may be found liable to his client for malpractice. It is that in satisfying the needs and desires of his client, lawyer II may be exposing himself to the not insubstantial cost of defending an action by his client's opponent." (94 Cal.App.3d at p. 355.) Explaining that the problem was more complex than whether lawyer II would be motivated to litigate rather than settle his client's claim in order to minimize exposure to a cross-complaint, the court observed that "[a] client seeking to extricate himself from a situation caused by the negligence of lawyer I may find his options limited both by legal constraints and practical considerations. The client's perception of his own best interests, after obtaining sound legal advice, may dictate a course which lawyer I may fairly characterize as 'unreasonable and disproportionate to the risk involved.' What effect a settlement so motivated would have on the client's claim against lawyer I is not before us. What is pertinent here is the effect upon the relationship between lawyer II and the client when the client's alternatives are under consideration. Lawyer II should not be required to face a potential conflict between the course which is in his client's best interest and the course which would minimize his exposure to the cross-complaint of lawyer I." (*Id.,* at p. 356.)

Thacher and Miller additionally contend that malpractice suits are simply a risk of professional life and should not affect the attorney's representation of the client. However, as *Gibson, Dunn* suggested, "exposure to the client's potential adversaries ' "would prevent [the successor attorney] from devoting his entire energies to his client's interests." ' " (*Id.,* at p. 356, quoting *Goodman* v. *Kennedy, supra,* 18 Cal.3d at p. 344.) As we see it, the real danger is the possibility that the prospect of a cross-complaint might not

only distract the successor attorney, but result in the compromising of his or her professional judgment.

Finally, Thacher and Miller rely heavily on the theory that the filing of a cross-complaint for equitable indemnity would have no more impact on the attorney-client relationship than is already achieved by allowing attorney-defendants to raise a defense of comparative fault against the plaintiff. (See *Rowell* v. *TransPacific Life Ins. Co., supra,* 94 Cal.App.3d 818, 821; see also *California Casualty Gen. Ins. Co.* v. *Superior Court, supra,* 173 Cal.App.3d at pp. 279, 281-282.) The most distinctive aspect of the cross-complaint is that if it succeeds it would financially burden only the successor attorney, not the client. The virtue of this result, of course, is that it advances the goal of equitable loss distribution posited in *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578. Because a cross-complaint for equitable indemnity would not reduce the client-plaintiff's recovery, Miller and Thacher claim it is the preferable alternative from the client's perspective. We do not agree.

The possibility of a cross-complaint against plaintiff's counsel interferes with the attorney-client relationship much more insidiously than the prospect of an imputed negligence defense. As pointed out in *Gibson, Dunn,* it is this *personal* exposure of counsel that " 'would inject undesirable self-protective reservations into the attorney's counselling role' and tend to divert the attorney from single-minded devotion to his client's interests." (*Gibson, Dunn & Crutcher* v. *Superior Court, supra,* 94 Cal.App.3d at p. 353, quoting *Goodman* v. *Kennedy, supra,* 18 Cal.3d at p. 344.) Such "self-protective reservations," which are a subjective consideration that may be difficult for counsel to consciously acknowledge and objectively assess, can more easily be avoided if, as under *Gibson, Dunn,* the successor attorney's alleged negligence could be asserted only as an affirmative defense.

The attorney-client relationship is uniquely susceptible to interference in this regard. Because of the nature of the attorney function, the attorney is the only professional who has a duty to advise a client that a malpractice action against another professional may provide a solution to the client's difficulties. (See *Goldfisher* v. *Superior Court, supra,* 133 Cal.App.3d at pp. 22-23, fn. 2.) If such a malpractice action could generate a cross-complaint against the attorney who urged that course, it can easily detract from the attorney's duty to selflessly and energetically serve the client's interest. (*Ibid.*) We think the majority in *Parker* v. *Morton* is unduly skeptical of the observation of *Held* v. *Arant, supra,* 67 Cal.App.3d 748 that an attorney would be more likely than a physician to be influenced in giving advice by the prospect of being sued for indemnity for his negligent conduct. (117 Cal.App.3d at p. 759, fn. 2.) As *Held* points out, a physician is not "retained

to represent the interests of his client against persons who are actual or potential adversaries . . . ." (*Held* v. *Arant, supra,* 67 Cal.App.3d at p. 752.) For the attorney who is retained for just this purpose, "the possibility that one of those adversaries may seek indemnity from the attorney if he is held liable to the client can impinge upon the undivided loyalty owed by counsel." (*Ibid.*)

The *Parker* v. *Morton* alternative to the majority rule set forth in *Gibson, Dunn* is in our view untenable. Although it disagreed with the view of most appellate courts that have addressed the issue that a predecessor attorney may not cross-complain for equitable indemnity against a successor attorney, the majority in *Parker* v. *Morton* did not reject this general rule. Instead, it simply carved out an exception by allowing such cross-complaints in those cases in which the lawyer's responsibility did not call for the exercise of professional judgment. As stated by Justice Kaufman for himself and Justice McDaniel: "In the case at bench . . . the institution of a suit against plaintiff's former spouse for division of the retirement benefits was necessary as a matter of law to serve the client's best interests whether or not suit was also filed against her former attorney for negligence in failing to have the retirement benefits disposed of in the dissolution proceeding. No exercise of judgment in choosing between alternative remedies was involved, and the possibility of a cross-complaint for proportional indemnity in the case at bench could not have affected the exercise of any such judgment." (*Parker* v. *Morton, supra,* 117 Cal.App.3d at p. 767.)

One of the difficulties with the *Parker* v. *Morton* exception is that its application cannot reliably be established until after a legal malpractice action has been filed against the predecessor attorney. The initial uncertainty vitiates the protection the exception purports to retain. As Judge Morris pointed out in her dissent, a threat to the attorney-client relationship will be present if there is even the *possibility,* as usually there will be, that the attorney's conduct may expose him to personal liability. "As long as a cross-complaint may be allowed if the court determines that the negligence alleged constitutes negligence as a matter of law, the danger to the attorney-client relationship envisioned by the courts in *Goodman, Held, Gibson, Dunn & Crutcher* and *Commercial Standard* remains." (*Parker* v. *Morton, supra,* 117 Cal.App.3d at p. 768, dis. opn. of Morris, J.)

There is an additional difficulty with the *Parker* v. *Morton* exception. Whether the facts of a particular situation imposed a legal duty on counsel that brings the case within the exception would, of course, have to be determined prior to trial. However, the critical factor that would need to be determined—whether *protection of the client's interest required the exercise of "professional judgment"*—which presents a mixed issue of law and

fact, usually cannot be established with much certainty from the pleadings or other evidence available at this early stage in the proceedings. The imprecision of the concept of "professional judgment" as that phrase is used in *Parker* v. *Morton* also casts doubt upon the efficacy of the exception carved out by that case. The question whether such judgment must be exercised is in reality a question as to the nature of the client's predicament. The problem cannot fairly be assessed from the point of view of anyone other than the particular client. It is that client, not a fictionalized reasonably prudent person, with whom the successor attorney is required to deal and who may have directed the action or inaction claimed to be negligent. The client's instructions or idiosyncratic factors the attorney felt obliged to consider may have resulted from the client's distorted perceptions or irrational fears. Therefore, whether an attorney's responsibility to the client presented an unambiguous legal duty or rather the "choice of alternative remedies of uncertain efficacy and requiring the exercise of professional judgment" involves a subjective assessment that cannot always be carried out without invading the sanctity of the attorney-client relationship. The question certainly presents a more complex issue than the majority opinion in *Parker* v. *Morton* assumes.

Our decision to reject *Parker* v. *Morton* and follow the majority rule makes it unnecessary to address at length Mull's further contention that in the circumstances of this case he is not a joint, concurrent, or successive tortfeasor with Miller or Thacher and that apportionment of liability is improper for that reason. Suffice it to state that, for reasons set forth in *Gibson, Dunn & Crutcher* v. *Superior Court, supra,* 94 Cal.App.3d at page 351, this contention is factually and legally untenable. Finally, our conclusion that the general rule prohibiting cross-complaints for equitable indemnity rests upon sound reasons of public policy necessarily includes the judgment that this rule is rationally based and denies neither due process nor equal protection. (See generally *Dandridge* v. *Williams* (1970) 397 U.S. 471 [25 L.Ed.2d 491, 90 S.Ct. 1153]; *Rittenband* v. *Cory* (1984) 159 Cal.App.3d 410, 424-425 [205 Cal.Rptr. 576].)

### III.

*Whether Refusal to Allow Miller to Cross-complain Denies His Rights Under Civil Code Sections 1432 and 1431.2*

■ Miller contends that pursuant to Civil Code sections, 1431.2 and 1432, he has a statutory right to allocation of damages in proportion to fault and that refusal to allow him to cross-complain against Mull for equitable indemnity in these circumstances denies him this right.

Section 1432 provides: "[A] party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him." This statute was enacted in 1872. No case has determined that this statute is inconsistent with or violated by the prohibition on Cross-complaints in the present context. Moreover, the availability of equitable indemnity is not now and never has been unlimited. (See *Munoz* v. *Davis, supra,* 141 Cal.App.3d 420, 428.)

Civil Code section 1431.2 is part of the Fair Responsibility Act of 1986 (the Act), Civil Code sections 1431.1 through 1431.5, adopted by the voters at the June 3, 1986, election as ballot Proposition 51. The Act abolished the principle of joint and several tort liability for nonpecuniary injury.

In *Russell* v. *Superior Court* (1986) 185 Cal.App.3d 810 [230 Cal.Rptr. 102] another division of this court held the Act was not retroactive and that it would apply only to causes of action accruing on or after the effective date of June 4, 1986.[2] Thus, that section is not applicable to the current controversy.

Even were the Act to apply retroactively to this action, we do not believe the rule barring cross-complaints for indemnity by an attorney against a successor attorney violates any right of defendant attorney thereunder. Both before and after the Act, a defendant's liability is reduced by the percentage of fault attributable to plaintiff. Defendant's ability to raise this defense in his answer would appear to us to satisfy section 1431.2.

The judgment is affirmed.

Smith, J., and Benson, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 21, 1988. Broussard, J., was of the opinion that the petition should be granted.

---

[2] In *Evangelatos* v. *Superior Court* (Cal.App.), Division Two of the Second District Court of Appeal held that the statute *did* apply to causes of action accruing before its effective date. The Supreme Court has granted review in that case (Apr. 16, 1987, S000194) and the matter was argued September 10, 1987.