[No. A051694. First Dist., Div. Two. July 9, 1992.]

LAURIEDALE ASSOCIATES, LTD., et al., Cross-complainants and Appellants, v.
SCOTT WILSON, Cross-defendant and Respondent.

**COUNSEL**

Gibson, Dunn & Crutcher, Peter J. Thurston, Steven J. Johnson and Karen A. Morgan for Cross-complainants and Appellants.

Ann Rankin and Maria Giardina for Cross-defendant and Respondent.

Berding & Weil and James O. Devereaux as Amici Curiae on behalf of Cross-defendant and Respondent.

**OPINION**

**PETERSON, J.**—The primary issue in this case is straightforward. May the developers of a condominium complex, who have been sued for construction defects by a homeowners association, cross-complain against individual unit owners for equitable indemnity? Under the facts of this case, we conclude the answer is "no."

## I. Factual and Procedural Background

This is an appeal from a judgment entered after a demurrer was sustained without leave to amend. We, thus, recite the facts as set forth in the pleadings.

The Lauriedale Homeowners Association (Association) is a California nonprofit corporation which was created to operate and manage the Lauriedale Condominiums, a 328-unit complex located in San Mateo. On a date which is not disclosed in the record, the Association filed a complaint against various persons and entities who had been involved in the development of the Lauriedale Condominiums.[1] Throughout this opinion, we will refer to these persons and entities collectively as appellants. Essentially, the complaint alleged that appellants were responsible for defects in the commonly owned areas of the complex—such as roofs, walkways, and decks—under legal theories such as breach of contract, negligence, and misrepresentation. In addition, the complaint alleged that certain appellants, who previously had served as members of the Association's board of directors while the developer was in control of the complex, had failed to adequately assess or collect fees from the various unit owners. As a result, the Association alleged it lacked the funds necessary to make repairs at the complex. Both parties agree that these latter allegations attempt to assert a cause of action for breach of fiduciary duty premised upon *Raven's Cove Townhomes, Inc.* v. *Knuppe Development Co.* (1981) 114 Cal.App.3d 783 [171 Cal.Rptr. 334], a prior decision from this court.

After being served with the complaint, appellants filed an answer and a cross-complaint. The cross-complaint generates the present appeal. In addition to naming various contractors and subcontractors who allegedly were responsible for damage at the complex, appellants named as cross-defendants over 700 persons who were then, or who in the past had been, owners of units in the Lauriedale Condominiums. We are concerned here only with the allegations of the cross-complaint against these unit owners; we note, however, that appellants also sought relief, equivalent to that sought in their cross-complaint, by affirmative defenses pled in their answer.

Although set forth in three causes of action, the allegations of the cross-complaint against the unit owners were based on only two legal theories. First, appellants denied that the common areas of the complex were damaged; but they alleged that, if such damage were proven, it was caused in

---

[1] The Association alleged it had standing to bring the suit under the authority of Code of Civil Procedure section 374. That section states that an association which has been established to manage a common interest development has standing to institute litigation for damage to the common areas of the development.

whole or in part by individual unit owners who had misused the property. Thus, appellants sought total or partial indemnity from the unit owners under an equitable indemnity theory. Second, appellants denied that those persons who had previously served on the Association's board, while the developer was in control of the complex, had failed to collect adequate fees and assessments; but contended that, if such allegations were true, the unit owners, inter alia, would have underpaid the appropriate fees and assessments. Thus, appellants finally contended that, if they were held responsible for such underassessed amounts, they were entitled to indemnity therefor from the individual unit owners, to prevent the latter's unjust enrichment.

The causes of action asserted against the unit owners as a whole were challenged by demurrer of one of the unit owners, respondent Scott Wilson. Wilson essentially contended that the cause of action for equitable indemnity should be dismissed, because it violated public policy and created an unnecessary conflict between himself and the Association. He challenged, for failure to state a cause of action, appellants' contention of entitlement to indemnity to preclude the unit owners' unjust enrichment. The trial court agreed and wholly sustained Wilson's demurrer without leave to amend. After a judgment in favor of Wilson was entered, appellants filed the present appeal.

## II. Discussion

Appellants challenge the trial court's ruling sustaining Wilson's demurrer. They maintain they properly asserted causes of action for equitable indemnity and "Unjust Enrichment."

### A. *Equitable Indemnity*

■ The legal principles governing equitable indemnity are well settled. "The purpose of [the doctrine] is to avoid the unfairness, under joint and several liability theory, of holding one defendant liable for the plaintiff's entire loss while allowing another responsible defendant to escape ' "scot free." ' " (*GEM Developers* v. *Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 426 [261 Cal.Rptr. 626].) As a general rule, a defendant "has a right to bring in other tortfeasors who are allegedly responsible for plaintiff's action through a cross-complaint . . . for equitable indemnification." (*Id.* at p. 428.)

However, because indemnification between joint tortfeasors is an equitable rule created to correct potential injustice, the doctrine is not available where it would operate against public policy. Thus, in *Holland* v. *Thacher*

(1988) 199 Cal.App.3d 924, 929-935 [245 Cal.Rptr. 247], this court held that public policy concerns precluded an attorney sued for malpractice from cross-complaining for indemnity against a successor attorney who was retained to extricate the client from the problems created by the first attorney. In *Munoz v. Davis* (1983) 141 Cal.App.3d 420, 427 [190 Cal.Rptr. 400], the court refused to permit an attorney, sued for malpractice for allowing a statute of limitation to expire, to cross-complain against a driver who caused the plaintiff's injuries. The *Munoz* court noted there was "no equitable basis for shifting malpractice liability from the negligent lawyer to the tortfeasor whose actions caused the client's original injuries." (*Ibid.*)

Even more pertinent to the present case is *Jaffe v. Huxley Architecture* (1988) 200 Cal.App.3d 1188 [246 Cal.Rptr. 432]. In *Jaffe*, the issue presented was whether the developers of a condominium complex, who had been sued by a homeowners association for construction defects, could cross-complain for equitable indemnity against individual members of the association's board of directors for acts and omissions which allegedly contributed to the original defects. The *Jaffe* court rejected the cross-complaint for two interrelated reasons. First, noting that the acts of the directors were, in legal effect, the acts of the association itself, the court concluded relief equivalent to that sought in the cross-complaint would be available to the developer through the various affirmative defenses it had asserted. Thus, fairness did not require that the developer be allowed to maintain a cross-complaint. Second, the court observed that a special relationship existed between the homeowners association and its directors, which for public policy reasons, should be preserved. Since the cross-complaint would effectively pit the board members against the association and jeopardize that relationship, the court concluded it would be unwise to allow the cross-complaint to proceed. (*Id.* at pp. 1192-1193.)

■ The factors which persuaded the *Jaffe* court to reject a cross-complaint for equitable indemnity lead to a similar conclusion in this case. Here, as in *Jaffe*, the cross-complaint against Wilson is unnecessary because equivalent relief is available through affirmative defenses appellants have asserted. In response to the allegation that they were responsible for defects at the complex, appellants alleged by affirmative defense that any damage was caused by individual unit owners who misused the property. The Association has conceded that the legal effect of this affirmative defense is to hold it responsible for damage caused by present and past unit owners. Thus, to the extent appellants can prove their affirmative defense, the Association's recovery will be diminished under principles of comparative negligence. (See, generally, *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 598 [146 Cal.Rptr. 182 [578 P.2d 899].)

Second, allowing a cross-complaint for equitable indemnity in a case such as this could jeopardize the special relationship between the Association and its members, one characterized as fiduciary in nature. (*Cohen* v. *Kite Hill Community Assn.* (1983) 142 Cal.App.3d 642, 650-651 [191 Cal.Rptr. 209].) In carrying out their fiduciary duties, the directors of the Association may well have believed they had an obligation to pursue the present suit to protect the interests of the individual unit owners. If such a suit could result in personal liability on the part of the individual unit owners, the decision to bring suit would be much more difficult because the directors understandably would be hesitant to entangle unit owners in litigation. Since board members are also usually unit owners, the decision to initiate litigation, and thus subject oneself to personal liability, would be doubly difficult.

Furthermore, public policy considerations weigh heavily against allowing a cross-complaint such as this from going forward. The high cost of living in California, and particularly in the Bay Area, is well recognized. For many segments of society, condominiums represent one of the last alternatives of affordable home ownership. The prospect of personal liability in a case such as this would place a severe burden on this important housing resource. We decline to permit such a burden where, as here, equivalent relief for the developer via its affirmative defenses was available and sought.

Appellants reject this analysis on several grounds. First, they maintain that the *Jaffe* holding does not apply in this case because they could not obtain equivalent relief through affirmative defenses. In essence, appellants argue that they will be unable to use the negligence of present or past unit owners as a defense to a suit brought by the Association. However, since the Association has properly conceded, as it must, that it is responsible for that portion of the damages caused by present and past unit owners proven in support of the allegations of appellants' affirmative defenses, these arguments are moot.

Next, appellants argue their cross-complaint would not interfere with the relationship between the Association and its members because homeowners associations frequently bring suit against individual members. For example, if a unit owner damages the common areas of a complex, an association often has not only the right, but the obligation, under the applicable governing documents, to hold the unit owner responsible. However, there is a distinct difference between a suit initiated by a homeowners association against a unit owner, and a suit initiated by a third party against a homeowner through a cross-complaint. In the former case, the motivations of the homeowners association initiating suit are generally clear: to hold the person actually causing the damage responsible therefor. Conversely, a cross-complaint such as that appellants seek to assert here can be motivated by nothing

more than "spite and a desire to spread confusion, [and] dissention [*sic*] in the opponent's camp." (*Commercial Standard Title Co.* v. *Superior Court* (1979) 92 Cal.App.3d 934, 945 [155 Cal.Rptr. 393]; see also *Holland* v. *Thacher, supra,* 199 Cal.App.3d at p. 930.) On this rationale, a cross-complaint for equitable indemnity, such as the one we consider, is rejected when it is clearly and potentially disruptive of the fiduciary relationship between a plaintiff and a cross-defendant. Though the cross-complaint we consider is urged to contain a facade of legitimacy, it realistically constitutes thinly disguised retaliatory litigation, the principal purpose of which is to pursue an adversarial scorched earth posture designed to cripple that relationship and thereby discourage legitimate litigation by the representative homeowners association.

Next, appellants rely on general language contained in cases such as *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578 and *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188 [246 Cal.Rptr. 629, 753 P.2d 585], to the effect that plaintiffs "no longer have the unilateral right to determine which defendant or defendants should be included in an action" under comparative negligence. (*Evangelatos* v. *Superior Court, supra,* 44 Cal.3d at p. 1197.) Appellants claim that under this principle they have an absolute right to maintain their action against unit owners such as Wilson. This argument simply ignores the fact that such cross-complaints for indemnity are disallowed where, as here, they would operate inequitably to interfere with the special relationship of the homeowners association and its present and past members.

Appellants further assert that their cross-complaint for equitable indemnity should be allowed to proceed under the reasoning of *Platt* v. *Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439 [266 Cal.Rptr. 601], and *Yamaha Motor Corp.* v. *Paseman* (1990) 219 Cal.App.3d 958 [268 Cal.Rptr. 514]. Those cases are clearly distinguishable. In *Platt*, the issue was whether a cross-complaint for equitable indemnity had to be dismissed solely because equivalent relief was available through the assertion of affirmative defenses. The *Platt* court recognized the holding of *Jaffe*, but concluded that the presence of equivalent relief alone, *without a corresponding special relationship*, did not render such a cross-complaint subject to demurrer. (217 Cal.App.3d at pp. 1446-1449.) The court in *Yamaha* also recognized the validity of the *Jaffe* decision, but refused to dismiss a cross-complaint for equitable indemnity because affirmative defenses asserted in the underlying complaint would not provide equivalent relief. (219 Cal.App.3d at pp. 970-971.) In the present case, unlike *Platt* or *Yamaha*, equivalent relief is available and a special relationship is present.

Finally, appellants argue strenuously that *Daon Corp.* v. *Place Homeowners Assn.* (1989) 207 Cal.App.3d 1449 [255 Cal.Rptr. 448], provides support

for their cross-complaint. In order to understand appellant's arguments, we must discuss this case in some detail. In *Daon*, a homeowners association brought suit against a developer for damages to the common areas of a condominium complex. The developer answered and then cross-complained against the association for equitable indemnity. The association's demurrer to the cross-complaint was sustained without leave to amend, and the developer filed an appeal from the judgment of dismissal. The pivotal issue on appeal was whether the ruling on the demurrer was an appealable order. To resolve that issue, the court first had to determine whether the judgment of dismissal constituted a final adjudication of the association's rights. The developer argued that, although the association was one entity, it had two capacities: one as a " 'surrogate plaintiff' " where it acted as a representative of individual unit owners, and another where it acted in its own capacity as a manager of units at the complex. The developer contended that the appeal was proper because the association had brought suit *only* in its representative capacity, while the cross-complaint named the association *solely* in its management capacity; and thus, that the dismissal of the cross-complaint was final as to the association in its management capacity. The *Daon* court rejected this argument, because the association's complaint contained allegations made by the association in *both* its management capacity and its representative capacity. Since the cross-complaint was not "the only vehicle to bring into the lawsuit the Association in its managerial capacity," its dismissal was not a final adjudication of the association's rights in its management capacity and was not appealable. (*Id.* at pp. 1453-1456.)

Appellants interpret *Daon* as holding that a homeowners association has two separate legal identities—representative and management, and that it may sue and be sued in both. They argue that a cross-complaint against the individual unit owners was necessary in this case because other rulings made by the trial court, which are not before us on appeal, limited their ability to cross-complain against the Association in its representative capacity. We need not discuss appellants' arguments in any great detail because we think they are based on a faulty premise: that a homeowners association may have more than one legal identity and that it may sue and be sued in both. We do not construe *Daon* to so hold and are unaware of any other authority which would support such a conclusion. It is true that the *Daon* court discussed the different functions of the homeowners association before it; but it did so in a very narrow context, when determining whether an order dismissing a cross-complaint was appealable. In certain circumstances, an appeal may be taken from a judgment disposing of " 'separate and independent' " issues between two parties, even if the judgment does not dispose of all causes of action between them. (See, e.g., *Day* v. *Papadakis* (1991) 231 Cal.App.3d 503, 509-512 [282 Cal.Rptr. 548]; *Armstrong Petroleum Corp.* v. *Superior*

*Court* (1981) 114 Cal.App.3d 732, 736-737 [170 Cal.Rptr. 767].) We view the *Daon* court's discussion of the different functions performed by the homeowners association as an attempt to apply a variant of this test, so it could determine whether the involved issues were sufficiently " 'separate and independent' " to justify an appeal. The case does not hold that homeowners associations can have more than one legal identity for purposes of bringing or defending suits. Nor does it hold that, by allegedly electing to sue in one capacity, the association may thereby selectively foreclose the assertion and application of affirmative defenses against it, on the rationale that such defenses apply to its action in a capacity different from that by which it elected to sue. ■ In short, once a homeowners association files a lawsuit, it cannot defeat affirmative defenses asserted against it, because of its derivative responsibility for acts of past and present members, solely because of the alleged capacity, managerial or representative, in which the association has initiated the subject action. Appellants' arguments to the contrary are unavailing.

### B. *"Unjust Enrichment"*

■ Appellants' alternate cause of action against Wilson is premised upon allegations contained in the Association's complaint. Essentially, appellants denied that those persons who had formerly acted as members of the Association's board had breached their fiduciary duties by failing to collect adequate fees and assessments from the individual unit owners; but if this had occurred, one result would be that individual unit owners would have underpaid the fees and assessments which were appropriate. Thus, appellants alleged that, should they be held responsible for the amount underassessed, they were entitled to indemnity from the individual unit owners so that the unit owners would not be "Unjust[ly] Enrich[ed]."

■ Initially we note that appellants have mischaracterized the legal theory underlying their cause of action. The phrase "Unjust Enrichment" does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so. (*Dinosaur Development, Inc.* v. *White* (1989) 216 Cal.App.3d 1310, 1315 [265 Cal.Rptr. 525].) ■ What appellants actually seek is restitution: a term which modernly has been extended to include not only the restoration or giving back of something to its rightful owner, but indemnification such as appellants seek in this case. (*Ibid.*)

■ Thus clarified, the issue in this case is whether a party which has breached its fiduciary duties may bring an action for restitution against the persons harmed by that breach. We conclude the answer is "no."

It is well settled that restitution will be denied where application of the doctrine would involve a violation or frustration of the law or opposition to public policy. (*Dinosaur Development, Inc.* v. *White, supra,* 216 Cal.App.3d at p. 1315; see also *Lucky Auto Supply* v. *Turner* (1966) 244 Cal.App.2d 872, 885 [53 Cal.Rptr. 628].) Indeed, section 140 of the Restatement of Restitution expressly states that a person may be prevented from obtaining restitution for a benefit because of his wrongful conduct in connection with the transaction on which his claim is based. Allowing the director of a homeowners association, who had breached his fiduciary duties by failing to collect adequate assessments, to maintain an action for restitution against the very persons harmed by his breach would be patently inequitable. The demurrer to this cause of action was properly sustained.[2]

III. DISPOSITION

The judgment in favor of Wilson is affirmed.

Kline, P. J., and Benson, J. concurred.

---

[2]Having reached this conclusion, we need not consider whether appellants' "Unjust Enrichment" cause of action is barred by the provisions of the Corporations Code.