Filed 4/16/13  Hoofman v. Pacific Crest Community Assn. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GLENN HOOFMAN et al., | B230036 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC364488) |
| v. | |
| PACIFIC CREST COMMUNITY ASSOCIATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Carolyn B. Kuhl, Judge.  Affirmed.

Schimmel & Parks, Alan I. Schimmel and Michael W. Parks for Plaintiffs and Appellants.

The Manship Law Firm and Penny J. Manship for Defendant and Respondent.

_____

Sarah and Glenn Hoofman appeal summary judgment in favor of respondent and cross-appellant Pacific Crest Community Association (PCCA). The Hoofmans commenced a class action on behalf of all members of PCCA and sued the developers of their single-family home's development, as well as PCCA, after a landslide on an allegedly defective common area slope damaged plaintiffs' home. Plaintiffs asserted a claim for breach of fiduciary duty based on plaintiffs' contention the developer-controlled board of PCCA concealed the defects and improperly increased assessments to shift the cost of the repair from the developers to PCCA. The trial court granted summary judgment for PCCA principally on the basis that (1) plaintiffs had failed to show an actual increase in assessments and, (2) any damage award to the class would be paid by PCCA. PCCA cross-appeals the trial court's denial of its cost bill. We affirm summary judgment and the trial court's denial of costs and attorney fees to PCCA.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     Class Complaint; Addition of PCCA as Indispensable Party

Plaintiffs own a single-family home on North Rock Canyon Drive in the 500-home Pacific Crest Development in Saugus; they purchased the home in 2003. Pacific Crest was built and developed by defendants Greystone Homes of California (Greystone), Lennar, Inc. (Lennar), Centex, Inc. (Centex), and Pacific Bay Homes (Pacific Bay) (collectively Developers).[1] PCCA was established by the Developers.[2]

In January 2005, the common area slope behind plaintiffs' home gave way, causing a landslide that damaged plaintiffs' home.

On January 9, 2007, the Hoofmans filed their class action complaint for strict liability, negligence, nuisance, breach of fiduciary duty, and unfair business practices

---

[1] The Developers are not parties to this appeal, which only concerns grant of summary judgment in favor of PCCA.

[2] Pacific Crest Community Corporation was incorporated in September 2000. The Covenants, Conditions, and Restrictions (CC&R's) governing the community identified the homeowners association as "Pacific Crest Community Association."

2

against the Developers. The action was brought on behalf of two classes of plaintiffs. The first class, the "Hillside Class," owned approximately 30 homes bordering North Rock Canyon Drive, High Sierra Trail, and Chisholm Place and were alleged to have been damaged by the landslide. The second class consisted of all of the members of PCCA, who were alleged to have been damaged by PCCA's attempt to wrongfully shift the repair costs of the landslide to the members of the association.

Plaintiffs alleged that the Developers engaged in a scheme of forcing the entire membership of PCCA to pay the costs to repair the dangerous and defective hillside. Further, plaintiffs alleged the Developers controlled PCCA from approximately 1999 through 2006 by placing agents and representatives of the Developers on the PCCA Board of Directors. Plaintiffs alleged that representatives of the Developers remained on the PCCA Board of Directors and knew of or became aware of the construction defects underlying the slope problems and wrongfully attempted to shift the cost of repairing the defective slope to PCCA instead of bearing the cost themselves.

Plaintiffs' first cause of action for strict liability against the Developers alleged that the slopes and grading of the development were defective due to faulty slope construction and grading, faulty design and construction of drainage, faulty soil compaction, and faulty construction of retaining walls. Plaintiffs' second cause of action for negligence against the Developers alleged negligence in the design, construction, and inspection of the hillside, slopes, and drainage, violation of applicable building codes and breach of defendants' duty to repair the defects. Plaintiffs' third cause of action for nuisance alleged the Developers' failure to repair the slopes constituted a private and/or public nuisance. Plaintiffs' fourth cause of action for breach of fiduciary duty alleged that the Developers had a conflict of interest and wrongfully used their position on the PCCA board to shift the cost of repairing the hillside to PCCA. Plaintiffs' fifth cause of action for unlawful business practices alleged that the Developers were aware of the defects in the slopes and drainage, built the development without following proper building codes, misrepresented the size of PCCA and its controlling parties, and conspired to limit their liability by creating one homeowners

3

association for all 500 homes, while the Developers retained control of the board of PCCA, and shifted the cost of repairing the slopes and drainage to PCCA.

After the Developers demurred to the complaint, on September 27, 2007, the trial court overruled the demurrers but required plaintiffs to join PCCA as an indispensable party. The trial court found that the defendants would be subject to double recovery if the homeowner class and PCCA sued in separate actions because the relief plaintiff sought also included a request that PCCA not be permitted to make a special assessment with respect to slope damage; such relief would require PCCA to be a party for relief to be effective. The court noted problems, however, with the addition of PCCA as a party, stating: "All I have to find is that they're an indispensable party. . . . Once they're an indispensable party, the plaintiffs have to figure out how to bring them in and how they should be aligned. . . . But it's clear to me that a pleading can be framed."

Plaintiffs' first amended complaint filed October 9, 2007, alleged the same causes of action, and included PCCA as a defendant. PCCA was named only in the fourth cause of action for breach of fiduciary duty cause of action and in a new sixth cause of action for declaratory relief. Plaintiffs alleged that the Developers breached their fiduciary duties by setting up only one homeowners' association for the entire development, even though there were three builders, and attempted to pass on to the association by assessment the cost of repairing defects. In the declaratory relief claim, plaintiffs alleged that PCCA had initiated a construction defect action against the Developers (PCCA action)[3] that was currently in

---

[3] Construction defects in the Pacific Crest development, as well as the slope failure, have spawned numerous lawsuits: (1) the PCCA action, titled *Pacific Crest Community Corporation v. Pacific Bay Properties et al.*, Los Angeles Superior Court case No. BC397710, filed September 8, 2008, alleging construction defects in the common areas against the Developers; (2) *Pacific Crest Community Corporation v. Santa Clarita Water*, Los Angeles Superior Court case No. BC381981, filed December 10, 2007, alleging that Santa Clarita Water's construction, operation, and maintenance of the drainage caused the landslide; (3) *Hoofman v. Greystone Homes*, Los Angeles Superior Court case No. PC038527, filed April 5, 2006; and (4) *Lalley v. Greystone Homes,* Los Angeles Superior Court Case No. BC355051, filed July 6, 2006. The class action was consolidated for trial

4

mediation under Civil Code section 1375[4] and that PCCA was not adequately representing plaintiffs' interests in the PCCA action, and sought a declaration that all disputes relating to the slope failure and construction defects be litigated in the current action.

## B.      Class Certification

On April 27, 2009, the Hoofmans moved for class certification. On September 8, 2009, the court granted the motion as to the Homeowner Class with respect to the claims for breach of fiduciary duty against the Developers and PCCA, and for violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) against the Developers. The trial court denied class certification as to the Hillside Class, and certified a class defined as current and former members of PCCA. At the hearing the court commented on possible damages, noting that diminution in value for concealment of defects or restitutionary disgorgement might be available. The court admonished plaintiffs that "as we go along preparing the case, we're going to have to have a moment in time in which you're going to need to state what your specific theories of damages are so that defendants can address [them]."

On December 29, 2009, the trial court approved the form of class notice. The notice stated that, "plaintiffs allege that the Pacific Crest Board violated its fiduciary duty through mismanagement and conflicts of interest created by its relationship with the developers. . . . [¶] Specifically, plaintiffs allege that the developers and the developer-controlled Board harmed all members of the Plaintiff Class by concealing defects to common area hillsides and slopes throughout the project that were turned over to the Association. Plaintiffs allege that the defendants have sought to pass on the financial costs and burdens of the defective hillsides and slopes to the Association members without

with the Hoofmans' individual case against Greystone, and was deemed related to Case Nos. BC355051 and BC397710.

[4] In 1995, the Legislature passed the Calderon Act, which requires common interest development associations to give notice to builders about construction defects before suing. (Civ. Code, § 1375, subd. (a).) The Calderon Act also provides that construction defect litigation be mediated. (Civ. Code, § 1375, subd. (f)(1).)

adequate financial reserves." The notice stated that plaintiffs would seek damages and equitable relief.

**C.  Motion for Judgment on the Pleadings**

On December 3, 2008, the trial court granted PCCA's motion for judgment on the pleadings as to the sixth cause of action for declaratory relief.

**D.  Summary Judgment**

*1.  PCCA's Summary Judgment Motion*

On April 30, 2010, PCCA filed a motion for summary judgment on plaintiffs' breach of fiduciary duty claim (the only claim pending against PCCA). PCCA argued that it was not liable for the acts of the developer-controlled board during the initial set up of the association; the later homeowner controlled board acted in good faith; the board's actions were protected by the business judgment rule; and the identity between the class members and PCCA precluded the granting of relief.

In support of its motion, PCCA presented evidence that from the time PCCA was established in September 2000 until June 2001, all five board members were employees of one of the Developers (Pacific Bay Properties); from June 2001 until April 2002, there was one homeowner board member and four employees of Pacific Bay Properties; from April 2002 until June 2005, there were only two homeowner board members and the other three board members were employees of defendants Centex and Greystone. From June 2005 until June 2006, there were three homeowner board members and two board members who were employees of Greystone. In June 2006, the board was entirely composed of homeowners. After the January 2005 slope issues, PCCA hired its legal counsel, Debra Sheppard, to investigate the slope issues and pursue legal remedies. PCCA decided to pursue claims for construction defects against the Developers. In that regard, PCCA filed the Pacific Bay Action and *Pacific Crest Community Association v. Santa Clarita Water*, Los Angeles Superior Court case No. BC381981.

PCCA did not levy any special assessments for slope repairs, nor did it make any slope repairs. Russell Hoffman, president of Valencia Management Group, the manager of

6

PCCA since October 2000, stated in his declaration that there had been no special assessments for slope repairs, nor had the increase in the homeowner dues been a result of slope repairs. Rather, the increases were due to inflation and other increased costs, such as insurance, water, and electrical. Glenn Hoofman testified at his deposition that his homeowner dues initially were $114 and he currently paid $145, but he did not have any information the increase in the dues was due to slope issues.

PCCA argued that because plaintiffs' claim for breach of fiduciary duty alleged that "[d]efendants breached their fiduciary duty to the [class] by attempting to spread the cost of repair for the construction defects to the [class] instead of the DEVELOPER DEFENDANTS," and PCCA had not done so, plaintiffs could not establish a breach of fiduciary duty. Further, because PCCA was pursuing legal remedies in the form of the two actions, it was acting in good faith; the claim was not ripe because plaintiffs had not suffered damage related to the repair of the slopes; and the initial directors owed the duty to create an adequate reserve fund.

### 2. *Plaintiffs' Opposition*

Plaintiffs asserted that the members of PCCA had been charged unreasonably high monthly assessments as a result of defendants' wrongful conduct and PCCA was grossly under reserved for the financial obligations represented by the defective slopes. Further, the Developers represented that the monthly assessments would go down following the build-out of the development. Plaintiffs asserted that PCCA knew of the serious risks of the slopes and PCCA's financial exposure, and the developers created a special $1 million holdback account for the slope issues.[5] Plaintiffs alleged that the PCCA board, while controlled by the Developers, gave confidential information to the Developers. They further alleged that PCCA did not have any incorporation status, acknowledging that while "Pacific Crest Community Corporation" was incorporated, the entity set forth in the CC&R's, "Pacific Crest Community Association," was not incorporated. Lastly, they

---

[5] The record does not disclose what happened to this $1 million reserve.

7

asserted that PCCA's refusal to repair the slopes did not absolve defendants, but instead supported their claims because PCCA had an obligation to fully fund and repair the slopes.

Plaintiffs presented evidence that at the time Debra Sheppard was hired to be PCCA's attorney, the board was controlled by defendant Pacific Bay. Russell Hoffman of Valencia Management Group (the managing agent for PCCA) did not discuss with other board members the possibility of slope failures. To Hoffman's knowledge, there was no study to determine the cost of slope replacement. Nonetheless, an August 2006 report from Praad Geotechnical, Inc. stated that the slope failures "constituted a significant hazard for the residents," and "must be repaired as soon as possible."

With respect to the board and PCCA, plaintiffs presented two expert declarations. The first, that of Daniel Nordberg, an attorney specializing in homeowner association law and who has participated in drafting legislation relating to the Davis-Stirling Act,[6] stated that the board and the Developers breached their duty of care to the plaintiff class members of PCCA. In his opinion, PCCA had numerous conflicts of interest and shared confidential information with the Developers. For example, David Wong, a PCCA board member, shared information with the Developer executives; Debra Sheppard also shared information with the Developers. In Nordberg's opinion, the Developers did not make sufficient reserves for slope issues. Nordberg had not seen any documents which particularly estimated the cost of repairing the slope defects, and believed the PCCA board worked to conceal the cost. In addition, the failure of PCCA to repair the slopes, given that they operated as a hazard to life and property according to board members Decker and Moran, Nordberg believed the PCCA Board's failure to attend to this hazard was a clear violation of the standards of care for PCCA and its board.

Further, the Developers significantly under reserved for potential costs associated with slope repair. Although he had not seen any documents specifically disclosing the

---

[6] Since 1986, much of the statutory law governing the formation, operation and management of common interest developments has been consolidated and is contained in the Davis–Sterling Common Interest Development Act. (Civ. Code, § 1350 et seq.)

8

estimated costs of claimed defects, he was appalled to see a concerted effort by members of the PCCA board and the developers to conceal the estimated cost. In his opinion, the failure of the association to make necessary repairs in the face of Praad's warning of the hazards of the slopes and PCCA's failure to take immediate steps was a violation of the standard of care. Although PCCA could pursue litigation on slope issues typically directly against the developers, "this strategy was not the only course of action and [such an] outcome very seldom compensated the full costs of repair" because litigation would last several years with no guarantee of recovery. As a result, "[a]ssociations were required to accept significant compromises and often millions of dollars less than the amount their experts advised would be needed to perform repairs. Nordberg stated that the assessments charged to the homeowners "have escalated beyond reasonable and planned limits . . . to subsidize the increasing gap in funding resulting from the enhanced cost of repairing and maintaining the slopes."

The second declaration, that of Robert M. Nordlund, an engineer with extensive experience in homeowner association reserve issues, stated that in his opinion, based upon the $1 million holdback and Centex's recognition that the slope issues in Pacific Crest were not accounted for in the original budget, PCCA had under reserved for slope issues, and as a result that a significant portion of the monthly assessments were going to fund slope issues. Nordlund concluded that "assuming the current estimated costs of maintenance and repair of the slopes . . . are in the tens of millions of dollars, all current members of [PCCA] are presently suffering a significant economic harm to their member interests."

Hoofman's declaration asserted that his monthly assessment had continued to increase, and he had received notices from the PCCA board regarding ongoing slope-related costs. "At certain points since the landslide, I have been informed to anticipate special assessments against me since I am one of the members whose property is adjacent to [the] slopes. PCCA has few amenities and I believe that the bulk of the assessments I am forced to pay for each month are due to slope maintenance and repairs that have been passed on to all the members of PCCA by the developers." Hoofman did not believe he, or the other

9

members of PCCA, had received honest and straightforward answers from the Developers or the PCCA board. He was concerned that they had concealed knowledge concerning the slope defects from him and the rest of the PCCA membership.

Plaintiffs presented evidence of slope problems dating from 2001 from homeowners living on Garnet Canyon Drive. Plaintiffs submitted a letter from Rich Chapla to PCCA dated July 15, 2001, regarding excess water on the slope behind his home on North Garnet Canyon Drive, and a follow-up letter dated August 6, 2001. They also submitted a letter dated July 22, 2002 from Michael and Susan O'Connor to PCCA regarding Pacific Bay's failure to install drainage pipes and resulting standing water on their property, and another letter dated July 15, 2002 to Pacific Bay regarding the same condition. Finally, they submitted a letter dated August 21, 2002 from Jeffrey and Michelle Mitchell regarding a drainage problem and failure of Pacific Bay to install drainage pipe.

On June 27, 2003, Debra Sheppard wrote to the PCCA Board regarding a Reserve Study Requirement, stating that slopes are considered major components of the property, and outlining requirements of study. She enclosed the State of California, Department of Real Estate Reserve Study Guidelines. PCCA's Reserve Studies, dated May 29, 2004 stated that "slope contingency" insurance was typically not available for slope failures and hillside properties were particularly vulnerable. An initial reserve of $50,000 was set up, and "[i]n the event of a catastrophic (i.e. more costly) occurrence, a special assessment may still be necessary and/or the association may elect not to repair/re-construct some areas."

In addition, plaintiffs relied on the escrow agreement transferring the common area property from the Developers to PCCA, which withheld from escrow $1 million for corrective grading work.

David Wong, a developer board member, knew of the holdback for slope issues. He did not recall telling anyone about it, and did not follow up on what happened to the holdback. No one explained to him how it was calculated. Wong was on the board in January 2005 when it authorized repair to remove soil and cover up the slopes. Wong did

10

not obtain specifics for repair, and did not recall that the board was involved with reports related to clean-up efforts after the landslide.

A February 4, 2005 letter sent to the homeowners in a question-and-answer format stated that whether a special assessment would be levied was speculative, but that PCCA had spent $32,000 for cleanup and sandbagging of the slopes, and approved $4,300 for geotechnical reports. The letter stated, "Currently, the Association has approximately $100,000 operating funds available, in excess of the monthly budgeted obligations . . . . [T]he Association's reserve study has a line item for Slope Damage that provides an additional source of funds set aside for this purpose. There are several options available to the Association for covering these costs, and we intend to exhaust all available resources before considering a special assessment or assessment increase."

### 3. *PCCA's Reply*

In reply, PCCA argued that plaintiffs' opposition was devoid of admissible evidence establishing triable issues of material facts; there was no duty to disclose future costs to maintain or repair the slopes when there is ongoing construction defect litigation; there was no duty to immediately repair the slopes; there was no evidence of any conflict of interest; there was no duty to adequately fund the reserves while there was ongoing construction defect litigation; and plaintiffs had not established any damages because the Nordberg declaration was without foundation.

### 4. *Hearing on Summary Judgment Motion, Trial Court Ruling*

At the July 16, 2010 hearing, the court took the matter under submission. On August 16, 2010, the court granted summary judgment. The court pointed out that the evidence established no special assessment had been levied by PCCA, and any increase in assessments were attributable to other factors. The court found that the Nordberg declaration failed to set forth any factual basis for its conclusions that there were inadequate homeowner reserves or that the homeowner assessments were too high; further, "he [did] not attach the documents he reviewed, [and] he does not even describe the documents he reviewed or the facts they contain. Such evidence is completely speculative." Further, the

11

Nordberg declaration lacked foundation for its conclusion that slope repair would cost millions of dollars. The trial court found similar deficiencies plagued the Nordlund declaration.

The court found plaintiffs had not shown damages as there was no evidence of any increase in assessments. With respect to the class action posture of the case, the court found this to be an additional reason for plaintiffs' inability to establish damages: "[T]he class, consisting of members of the [homeowners association], cannot state a claim for damages against the [homeowners association] itself, because any damages that might be awarded against the [homeowners association] would have to be paid by the very homeowners who constitute the plaintiff class," citing *Knox v. Streatfield* (1978) 79 Cal.App.3d 565 (*Knox*). Further, "[a]ll of the members of the homeowner class are also members of the [homeowners association]. The burden of any recovery against the [homeowners association] as such would be borne by members of the plaintiff class themselves. A victory for the plaintiffs would injure them, as they would be required to fund the payment of their own damages. Thus, the conflict between the plaintiff class and the defendant [homeowners association] is more glaring and complete than in *Knox*, and class recovery must be denied." The court emphasized that "[t]he essential identity between a homeowner's association and its members is reflected in the policy underlying Civil Code section 1368.4[, subd. ](a), which provides that, when a homeowners' association sues a developer for injury sustained by the association or its members, the developer may not bring a cross-complaint for contribution or implied indemnity against the homeowners' association," citing *Lauriedale Associates, Ltd. v. Wilson* (1992) 7 Cal.App.4th 1439 (*Lauriedale*) and *Jaffe v. Huxley Architecture* (1988) 200 Cal.App.3d 1188 (*Jaffe*). The trial court acknowledged that throughout the proceedings it had refused to grant a dismissal of PCCA, and initially required it to be joined as an indispensable party, but found that PCCA's papers convinced the court that "the HOA cannot properly be sued for damages common to all members of the [homeowners association]." The court dismissed the

plaintiffs' individual claims against PCCA because they were based on the same facts and theory.

**DISCUSSION**

Plaintiffs argue the trial court erred in (1) finding lack of admissible evidence on damages; (2) basing its ruling of lack of evidence on increased assessments because plaintiffs sought damages in addition to increased assessments in the form of harm to their property rights due to the defective slopes; (3) finding the certified homeowner class did not have standing to sue PCCA; (4) improperly shifting the burden on summary judgment by failing to properly weigh the evidence in the light most favorable to the plaintiffs; (5) failing to grant a continuance of the motion to permit plaintiffs to gather admissible evidence in opposition; (6) improperly excluding admissible evidence from plaintiffs' experts; (7) making erroneous privilege rulings which denied plaintiffs discovery; (8) failing to make specific orders on plaintiffs' evidentiary objections to PCCA's summary judgment; (9) finding the conflicts between the association and plaintiffs because of their essential identity was an improper basis for summary judgment; (10) failing to find the public policy embodied in *Raven's Cove Townhomes, Inc. v. Knuppe Development Co.* (1981) 114 Cal.App.3d 783 (*Raven's Cove*), and other cases support the right of a homeowner class to assert their fiduciary duty claim; and (11) failing to adjudicate PCCA's business judgment argument and failing to find it was not entitled to judgment on this ground.

## I.   STANDARD OF REVIEW

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(1); *Aguilar*, at p. 850.)  A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at

13

p. 850.)  Where summary judgment has been granted, "[w]e review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted  inferences the evidence reasonably supports."  (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 476.)

"'A different analysis is required for our review of the trial court's . . . rulings on evidentiary objections.  Although . . . an appellate court reviews a summary judgment motion "de novo," the weight of authority holds that an appellate court reviews a court's final rulings on evidentiary objections by applying an abuse of discretion standard.'" (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335.)

## II.     SUMMARY JUDGMENT

### A.     Fiduciary Duties of Homeowners Associations

The directors owe a fiduciary duty of undivided loyalty to the homeowners association, and may not make decisions for the association that benefit their own interests at the expense of the association and its members.  (*Raven's Cove*, *supra*, 114 Cal.App.3d at p. 799.)  "The association is governed by a board of directors and the powers of the directors are enumerated in the development's governing documents.  State and federal statutes as well as common law impose obligations on the directors."  (*Ritter & Ritter, Inc. Pension & Profit Plan v. The Churchill Condominium Assn.* (2008) 166 Cal.App.4th 103, 118 (*Ritter & Ritter, Inc*.).)

The Nonprofit Mutual Benefit Corporation Law (Corp. Code, § 7110 et seq.) is designed to facilitate the conduct of business by a homeowners association that is managed by a board of directors under the control of the developer.  Although a developer who dominates a homeowners association is subject to greater judicial scrutiny (*Raven's Cove*, *supra*, 114 Cal.App.3d at p. 800), transactions involving a conflict of interest of directors are not automatically voidable, as long as full disclosure is made and the transactions are approved by the general membership without the interested director(s) being entitled to vote their membership(s), or if the conflict is fully disclosed to the board and the board approves the transaction by a vote sufficient, without counting the vote of the interested director(s),

14

and the transaction is "just and reasonable to the corporation at the time of its authorization, approval, or ratification." There is an allowance for transactions not approved by the members or disinterested directors, if the person asserting the validity of the transaction proves that the transaction was just and reasonable as to the corporation at the time it was authorized, approved, or ratified. (Corp. Code, § 7233.)

A person who serves simultaneously as a director of the developer corporation and a director of the owner association corporation does not, by the mere fact of the common directorship, have a "material financial interest" within the meaning of Corporations Code section 7233, subdivision (a). Similarly, this principle applies to any individual who may not be a director appointed by the developer, but who serves as a principal or an officer of the developer entity and as a director or officer of the owners association simultaneously. Corporations Code section 7233 subdivision (b) provides that a contract between corporations of common directors is not void or voidable because the common directors were present during the authorization, approval, or ratification of contract, provided the material facts are fully disclosed and the transaction is approved by a vote sufficient without counting the vote of the common directors, or is approved by the members of the association.

### B. Standing of Class to Pursue Action Against Association

#### 1. *The Homeowner Class is Equivalent to PCCA*

Code of Civil Procedure section 382 provides in part that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." Two basic requirements must be met for a class action: the existence of an ascertainable class, and a well-defined community of interest in the questions of law and fact involved. (*Villacres v. ABM Industries, Inc.* (2010) 189 Cal.App.4th 562, 573.) Whether a class is "ascertainable" is determined by evaluating the class definition, the size of the class, and the means available for identifying class members. (*Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1271.) A community of interest exists where

three factors are present: "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326.) In *Raven's Cove*, *supra*, 114 Cal.App.3d 783, the court held that the homeowners association had the capacity to sue, in a representative capacity, the developer for damages to the common area and exterior of individual units based on defective landscaping. (*Id.* at p. 796.)

In *Knox*, *supra*, 79 Cal.App.3d 565, upon which the trial court relied, the plaintiff, the owner of a condominium, filed a class action on behalf of owners of the complex who had been damaged by certain other property owners in the complex, who were named as defendants. (*Id.* at p. 568.) Plaintiff charged that defendants violated the declaration of restrictions of use of the complex by constructing various improvements, including addition of a storage shed, painting, installation of fencing, and construction of a log gate and dog pen, which improvements caused plaintiff to be unable to sell his unit. (*Id.* at p. 569.) *Knox* identified "the first problem" with the case as the ascertainability of the class. "If we follow plaintiff's allegations in his complaint to the letter, that he brings the action on behalf of all the owners in the Malibu Bay Club, there is no true class for the following reasons: Some of the owners, those who allegedly violated some of the restrictions, would be at the same time plaintiffs and defendants, thus presenting an insurmountable conflict." (*Id.* at p. 571.) *Knox* relied on *Horton v. Citizens National Bank* (1948) 86 Cal.App.2d 680, where a lot owner in a tract brought an action on behalf of all lot owners in the tract against a bank to enforce provisions in a declaration of restrictions. The court held there could be no common class where enforcement of an agreement in favor of some would adversely affect the interests of others. (*Id.* at pp. 683–684.)

In *Jaffe*, *supra*, 200 Cal.App.3d 1188, the court considered whether in a construction defect action brought by a homeowners' association the construction firm could seek equitable indemnity against certain of the homeowner board members on a theory that the board contributed to the damage. (*Id.* at p. 1190.) Noting that equitable indemnity was

16

doctrine designed to correct potential injustice, the court observed "it has no utility where there is no such potential." *Jaffe* found that the construction firm had a method to recover from the board members through the device of comparative negligence, and thus fairness to the construction firm did not depend on availability of equitable indemnity. In addition, *Jaffe* identified the strong policy in favor of preserving the special relationship of homeowners to their association because "[t]he board members of a homeowners association are seldom professional managers, are very often uncompensated and most often are neighbors." (*Id*. at p. 1193.) *Jaffe* pointed out that "the special relationship here is fraught with potential conflict of interest should third parties be permitted to pit the Association against its directors by way of indemnity cross-complaints. . . . [¶] [W]e believe it is better to leave in the hands of the homeowners association the question of personal liability of the board members and whether they are to be sued for negligent performance of their duties." (*Ibid*.)

The same concept was addressed in *Lauriedale*, *supra*, 7 Cal.App.4th 1439. There, the developers of a condominium complex were sued for construction defects in the common areas by the homeowners association, and cross-claimed against the individual unit owners for equitable indemnity based upon the asserted breach of fiduciary duty of certain of the homeowners who were board members of the complex's association and who had failed to adequately assess necessary fees from the owners. (*Id.* at p. 1442.) Relying on *Jaffe*, *supra*, 200 Cal.App.3d 1188, the court in *Lauriedale* rejected the claim for equitable indemnity, finding as follows: equivalent relief was available through assertion of affirmative defenses, permitting the cross-complaint to proceed would jeopardize the relationship between the association and its members, and permitting suit to go forward would burden the affordability of common interest developments. (*Lauriedale*, at pp. 1444–1445.)

Here, there is no "true class" for the reason that the plaintiff class consists of members of defendant PCCA, the homeowners association of which plaintiffs are all members. We cannot tell a plaintiff from a defendant. If any relief is to be granted for

17

inadequate reserves or slope repair, the plaintiffs will be paying for it as defendant members of the association. Thus, whether or not PCCA as an entity has separate status from its constituent members does not resolve the issue; rather, the question is whether appropriate relief can be granted. In this case, it cannot. Finally, as in *Raven's Cove*, *supra*, 114 Cal.App.3d 783, the homeowner's association here is an adequate representative of the common interests of the homeowners in the in the currently pending PCCA action. Thus, the trial court did not err in sustaining summary judgment for PCCA on this ground.

### 2. *Plaintiffs' Contrary Arguments Do Not Change the Result*

For this reason, we reject plaintiffs' arguments that suit is permissible here merely because homeowners' associations are subject to suit as separate entities (*Ritter & Ritter*, *supra*, 166 Cal.App.4th at p. 120), and that a homeowners' association may be sued for breach of fiduciary duty (*Raven's Cove*, *supra*, 114 Cal.App.3d at p. 799.) Plaintiffs ask this court to overlook the ambiguous entity status of PCCA (it is unclear whether the proper entity was incorporated) and contend that unlike the plaintiff in *Knox*, *supra*, 79 Cal.App.3d 565 who was suing individual homeowners, here they are suing a separate entity and so the conflict present in *Knox* does not appear. Further, they point out that the trial court's prior rulings regarding PCCA's status as an indispensable party and its certification of the class render its ruling on summary judgment to exculpate PCCA inexplicable because *Lauriedale*, *supra*, 7 Cal.App.4th 1439 and *Jaffe*, *supra*, 200 Cal.App.3d 1188 have no application because there, developers were suing the association, not homeowners.

First, PCCA's ambiguous corporate status does not affect its capacity to sue and be sued, or our analysis in this case. Associations are responsible for the maintenance of the development's common areas. An association can be unincorporated or incorporated. (Civ. Code, § 1363, subd. (a).) Most associations are incorporated under the Nonprofit Mutual Benefit Corporation Law discussed *ante*. (Corp. Code, § 7110 et seq.) Unless the governing documents provide otherwise, an incorporated or unincorporated association may exercise the powers granted to a nonprofit mutual benefit corporation. (Civ. Code, § 1363, subd. (c).)

18

Second, plaintiffs' attempt to distinguish *Knox* fails because the effect of plaintiffs' action here in suing PCCA as a whole is to sue all the members of the association individually and with respect to the ultimate award of damages the class itself, through its defined membership in PCCA, will be paying the class's damages. Thus, the separate entity status of PCCA does nothing to change the character of the relief sought in this case—the homeowners are attempting to sue themselves by cloaking the lawsuit with a class device and targeting the association, rather than the assertedly responsible individual actors as defendants.

Third, the procedural posture of *Lauriedale* and *Jaffe* alone does not constitute a basis for not applying the rationale of those cases here. As set forth in *Lauriedale* and *Jaffe,* there were sound practical and policy reasons for not permitting the indemnity cross-claims to proceed. Those practical and policy reasons likewise exist here. "Traditional tort principles impose on landlords, including homeowner associations, that function as a landlord in maintaining the common areas of a large condominium complex, a duty to exercise due care for the residents' safety in those areas under their control." (*Ritter & Ritter, Inc.*, *supra*, 166 Cal.App.4th at p. 119.) A homeowners association is liable to a member who suffers injury or damages as a result of alleged negligence of the association in failing to maintain a common area adequately. (*Id.* at p. 120.) In addition, "[a] corporate officer or director, like any other person, owes a duty to refrain from injuring others. [Citations.] Consequently, directors are jointly liable with the [association] and may be joined as defendants if they personally directed or participated in the tortious conduct." (*Id.* at pp. 120–121.)

Applying those principles here, the net result of plaintiffs' class action is to pit most of the members of PCCA, as defendants, against the class members consisting of current and former members of PCCA, which class members also include the board of directors, some of whom were the developer board members. As a result, the conflicts of interest here are extreme, given the broad sweep with which plaintiffs have identified their defendants to include nearly everyone who is also a plaintiff. Permitting the action to proceed against

19

PCCA would jeopardize the relationship between the association and its members. Further, like the parties in *Jaffe* and *Lauriedale,* other avenues of recovery are available: the class's common damage issue as to the defective slopes is being pursued by PCCA in the PCCA action.

Finally, the fact the trial court made prior rulings on the class's status ostensibly inconsistent with its ultimate ruling on summary judgment is no grounds for reversal of summary judgment. Regardless of whether the court's ruling on summary judgment was inconsistent with its prior rulings on the joinder and class issues, in the interests of justice and judicial economy, a trial court retains the power to change its prior ruling. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1108; *Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1156–1157.)

### C.     Ripeness:  Plaintiffs Have Not Shown Damages

Whether a case is founded upon an "actual controversy" centers on whether the controversy is justiciable. "The principle that courts will not entertain an action which is not founded on an actual controversy is a tenet of common law jurisprudence, the precise content of which is difficult to define and hard to apply. The concept of justiciability involves the intertwined criteria of ripeness and standing. A controversy is 'ripe' when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." (*California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22–23; *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170 (*Pacific Legal Foundation*).)

"The ripeness requirement . . . prevents courts from issuing purely advisory opinions. [Citation.] It is rooted in the fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion." (*Pacific Legal Foundation*, *supra*, 33 Cal.3d at p. 170; *Coral Construction, Inc. v. City and County of San Francisco* (2004) 116 Cal.App.4th 6, 25–26.) To determine if a controversy is ripe, we employ a two-pronged test: (1) whether the dispute is sufficiently concrete that declaratory relief is appropriate; and (2) whether withholding judicial consideration will result in the

parties suffering hardship. (*Pacific Legal Foundation*, at pp. 171–173.) "Under the first prong, the courts will decline to adjudicate a dispute if 'the abstract posture of [the] proceeding makes it difficult to evaluate . . . the issues' [citation], if the court is asked to speculate on the resolution of hypothetical situations [citation], or if the case presents a 'contrived inquiry' [citation]. Under the second prong, the courts will not intervene merely to settle a difference of opinion; there must be an imminent and significant hardship inherent in further delay. [Citation.]" (*Farm Sanctuary, Inc. v. Department of Food & Agriculture* (1998) 63 Cal.App.4th 495, 502.)

Here, even assuming we were to find plaintiffs could pursue this action under *Knox*, there was no concrete evidence, aside from speculation, that a special assessment had been levied or that the association's regular assessment had risen as a direct result of an attempt to transfer the cost of the slope repair from the developers to PCCA. For example, Russell Hoffman, the managing agent for PCCA, stated that there had been no study done to determine the cost of repairing the slope, which study would logically have formed the basis for any proposed or actual increase in assessments; similarly, Nordberg had not seen any documents estimating the cost of slope repair. Further, the evidence of actual damages was nebulous: Nordberg's conclusory statement that the homeowner dues had escalated beyond what was reasonable was without foundation; Hoofman admitted that at most he had been told to "anticipate" a special assessment; and Hoofman's assertion that the dues had gone up, but his inability to point to any portion of such increase directly attributable to slope repair.

In spite of this, plaintiffs assert that they individually suffered property damage as a result; further, they had alleged additional damages in the form of diminution in value, restitution, and declaratory relief, which types of damages are available in class actions. This argument fails for two reasons: the availability of damages does not amount to proof

21

of damages, and the Hoofmans' individual damages cannot save the class action complaint from a lack of proof of class damages.[7]

### C.     Plaintiffs' Procedural Arguments

Plaintiffs identify numerous procedural grounds for reversal of summary judgment: they assert the trial court erred in denying them a continuance to conduct more discovery; the trial court failed to properly weigh plaintiffs' expert declarations; a prior discovery order upholding and expanding a *Calderon* privilege for PCCA was prejudicial and such order should be reversed; and the trial court failed to make specific rulings on the parties' written objections.

#### 1.     Entitlement to a Continuance

Plaintiffs' ex parte application for a continuance argued that PCCA had delayed and obstructed completion of depositions of PCCA board members Steve Decker and Rene Moran. Plaintiffs contend on appeal that the continuance should have been granted, and if a continuance had been granted, the outcome would have been different.

Code of Civil Procedure section 437c, subdivision (h) provides that "[i]f it appears from the affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had . . . . The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due." (Code Civ. Proc., § 437c, subd. (h).) "The statute mandates a continuance of a summary judgment hearing upon a good faith showing by affidavit that additional time is needed to obtain facts essential to justify opposition to the motion. [Citations.] Continuance of a summary judgment hearing is not mandatory, however, when no affidavit is submitted or when the submitted affidavit fails to make the necessary showing under [Code of Civil Procedure] section 437c, subdivision (h).

---

[7] As we find PCCA was entitled to summary judgment on these two grounds, we need not address PCCA's business judgment argument.

[Citations.]" (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 253–254.) "A declaration in support of a request for continuance under [Code of Civil Procedure] section 437c, subdivision (h) must show: '(1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts. [Citations.]' [Citation.]" (*Cooksey*, at p. 254.)

On appeal, plaintiffs make no argument on appeal why obtaining further discovery from Decker or Moran would have changed the result in the trial court. We consider this argument forfeited. (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 650.)

### 2. Weighing of Expert Declarations

Plaintiffs assert that Nordberg set forth the documentation on which he relied (deposition of David Wong, communications with Debra Sheppard, the Praad Engineering report, the declarations of Steve Decker and Rene Moran, lack of evidence of disclosures to the association by the board, and the $1 million holdback fund for the developers) and that such documentation was attached to the Hoofmans' opposition papers. However, they complain that in spite of this documentary support, the trial court sustained objections to portions of the declaration ostensibly on grounds of speculation and improper expert testimony.

Plaintiffs also assert Nordberg set forth the documentation upon which he relied (reserve and budget information for PCCA, the $1 million holdback agreement, and Department of Real Estate documentation) and that such documentation was attached to the Hoofmans' opposition papers. Plaintiffs further assert the trial court improperly rejected Nordberg's opinions on the amount of proper reserves, but that such reserve requirements are part of the Davis-Stirling Act.

Plaintiffs' argument fails. The trial court in ruling on summary judgment does not weigh evidence, but instead considers whether the evidence creates a triable issue of fact. (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 113.) As a threshold consideration, however, the evidence must have an adequate foundation before the court

23

can consider whether triable issues exist. An expert may rely upon hearsay and other inadmissible matter in forming an opinion. (Evid. Code, § 801, subd. (b).) But matter relied upon must "provide a reasonable basis for the particular opinion offered." An expert opinion may not be based on conjectural or speculative matters. (*Korsak v. Atlas Hotels, Inc.* (1992) 2 Cal.App.4th 1516, 1524; see also *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 771–772.)

Here, the trial court rejected the expert declarations as speculative. We find no abuse of discretion in this conclusion. Although the materials upon which Nordberg and Nordberg relied themselves appear to be reliable sources of information, our review of the supporting documentation reveals that the information contained in those sources is either too generalized or nonexistent regarding the points plaintiffs sought to establish and therefore does not support the very specific conclusions the experts made.

### 3. Order Regarding Calderon Act Privilege

#### a. Factual Background

On April 19, 2010, plaintiffs moved to compel production of documents, contending that PCCA was improperly relying on the mediation privilege of Evidence Code section 1119 and Civil Code section 1375, subdivision (l) and refusing to produce "entire swaths of documents" relating to slope defects, costs of repair, and the financial burdens on PCCA.

At the May 12, 2010 hearing, the court stated that no Calderon Act privilege could be asserted before May 26, 2005 or after August 1, 2008, the dates between which the Calderon Act mediation was ongoing; no attorney-client privilege could be asserted with respect to documents sought in possession of the Pacific Bay or Centrex; claims of financial privacy could only be asserted with respect to documents in the possession of Pacific Bay that did not relate to PCCA; and the financial records of PCCA must be produced in their entirety, but redacted to protect individual homeowners' privacy. On May 12, 2010, the court entered an order adopting its tentative ruling granting the motion in part.

24

b.      Discussion

Plaintiffs have again provided little argument in their briefs other than to state that the court broadened the privilege and by so doing, permitted defendants to block further discovery and thwarted plaintiffs from completing discovery before opposition to summary judgment was due.  Plaintiffs point to no document identified in PCCA's privilege log that they require produced, or why the failure to have it produced created prejudice to the preparation of their opposition.  Without further elaboration, we cannot evaluate this argument on appeal.  We consider this argument forfeited.  (*Boyle v. CertainTeed Corp.*, *supra*, 137 Cal.App.4th at p. 650.)

4.      *Ruling on Written Objections*

a.      Factual Background

Plaintiffs filed written objections to the declarations of Decker and Moran, objecting on grounds of foundation, hearsay, improper legal opinions and conclusions, assumption of facts not in evidence, and lack of authentication.  Plaintiffs objected to the following statements of Decker:  (1) that Debra Sheppard was the general counsel of PCCA; (2) Valencia Management Group was the managing agent of PCCA: (3) prior to Decker's service on the board, all members of the board were members of Pacific Bay; (4) Decker was the only homeowner on the board from June 2001 to April 2002; (5) from April 2002 to June 2005, there were only two homeowners on the PCCA Board; (6) the other board members were employees of Centrex and Greystone; (7) all slope issues occurred in January 2005, and PCCA hired its counsel to investigate the slope issues; (8) PCCA never authorized a waiver of the attorney client privilege; (9) beginning in June 2006, all members of the PCCA board were homeowners; (10) PCCA did not levy a special assessment to recover the cost of repair of the slopes; (11) PCAA had not made repairs to the slopes during Decker's tenure on the board; (12) PCCA had not made a special assessment.  With respect to Moran, plaintiffs objected to the following statements:  (1) Moran was a member of the board since June 22, 2004 and was a homeowner in Pacific Crest; (2) that Debra Sheppard was the general counsel of PCCA and had served as such during Moran's tenure

25

on the board; (3) Valencia Management Group was the managing agent of PCCA during Moran's tenure on the board; (3) from the time she began serving on the board until June 2005, three of the board members were employees of Centex or Greystone; (4) beginning in June 2005 until June 2006, there were three homeowner board members, the two other nonhomeowner board members were employees of Greystone; (5) all slope issues occurred in January 2005, and PCCA hired its counsel to investigate the slope issues; (6) beginning in June 2006, all members of the PCCA board were homeowners; (7) PCCA did not levy a special assessment to recover the cost of repair of the slopes; (8) PCAA had not made repairs to the slopes during Decker's tenure on the board; (9) PCCA had not made a special assessment. The trial court did not rule on the objections.

b.      Discussion

Plaintiffs' objections are not well taken. The declarants made the statements based upon their personal knowledge, providing the foundation for the statements. In addition, further foundation was provided by the declarants' membership on the PCCA board. None of the statements is hearsay, as none is an out-of-court statement offered for the truth of the matter asserted; rather, they are statements made by the declarant. Finally, statements based upon personal knowledge are percipient statements, and do not constitute opinion, and factual statements such as these that embody no legal issue do not constitute legal conclusions.

## III.    CROSS-APPEAL

PCCA argues the trial court erred in striking most of its costs and the entirety of its attorney fees request. With respect to costs, it argues that the trial court abused its discretion in striking costs because plaintiffs failed to submit a declaration in support of their motion to tax costs, and in any event, plaintiffs' allegations that the costs were duplicative or unnecessary is without merit because many of the items, such as depositions, benefited parties in the related actions pending on the construction defect issues. (*County of Kern v. Ginn* (1983) 146 Cal.App.3d 1107, 1113–1114.) PCCA argues that its attorney fees were awardable pursuant to pursuant to paragraph 10.3 of the CC&R's, and that under the

26

authority of *Gunlock Corp. v. Walk on Water, Inc.* (1993) 15 Cal.App.4th 1301, 1304, no noticed motion was required.

## A. Factual Background

PCCA submitted a cost memorandum totaling $221,903.41, of which $201,588.65 was for attorney fees, $2,184 was for filing and motion fees, $9,484 was for deposition costs, $1,054 was for court reporter fees, and $7,592.76 was for copying, litigation support, and mediation. No documentary support was attached to the motion.

Plaintiffs filed a motion to tax costs, arguing that PCCA was not a prevailing party because PCCA was joined as an indispensable party; some of the filing fees were duplicates; deposition costs were not recoverable because they were for the benefit of the related actions; attorney fees were not authorized by contract or statute; and the deposition and miscellaneous fees for copying, litigation support and mediation were not authorized and were not recoverable pursuant to Code of Civil Procedure section 1033.5, subdivisions (a) and (b). Specifically, plaintiffs argued that the costs incurred were connected to at least three of the related actions and were not necessary; further, there was no basis for an attorney fees recovery because there was no contract to provide a contractual basis for such fees.

PCCA's opposition argued that the Davis-Stirling Act authorized fees pursuant to Civil Code section 1354, subdivision (c) and pursuant to PCCA's governing documents at paragraph 10.3.[8] Further, PCCA requested that if the court required a motion, that its opposition be deemed such a motion. With regard to specific costs, PCCA asserted they were necessary—although it withdrew its request for certain filing fees totaling $874. Attached to its opposition was the declaration of attorney Stephen D. Flaherty, who attested to the amount and appropriateness of the attorney fees.

---

[8] The relevant language in the CC&R's provides: "The Declarant, the Board, the Association, or any Owner shall have the right to enforce, in any proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration, and in such action shall be entitled to recover reasonable attorneys' fees as ordered by the court."

27

At the hearing held November 9, 2010 the trial court granted the motion to tax costs, and denied it as to certain filing fees and litigation support charges, and awarded $1,824.80 in costs. The court (1) denied deposition costs on the related actions, because such costs were only awardable if such depositions were taken either by the party claiming costs or an adversary, (2) denied transcript costs because they were not ordered by the court, (3) denied copying costs because they were not used for exhibits, and (4) denied mediation costs because such costs were incurred at the discretion of the parties. The court granted the remaining costs. The court did not address the issue of whether a noticed motion was required for an award of attorney fees and proceeded to the merits of the attorney fees request. The court noted that with respect to attorney fees, the fees did not fall into the definition of the types of claims for which fees are available under the fee provision in the CC&R's. Specifically, the court stated that the breach of fiduciary duty claims fall within the language of the governing documents at paragraph 10.3 because "it's not a wholesale type of language."

### A. Motion to Tax Costs

Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding. (Code Civ. Proc., § 1032, subd. (b); *Crib Retaining Walls, Inc. v. NBS/Lowry, Inc*. (1996) 47 Cal.App.4th 886, 889–891.) If the items on the face of a cost memorandum appear to be proper charges, the verified memorandum of costs is prima facie evidence of their propriety, and the burden is on the other party to show the costs were not reasonable or necessary. (*Ladas v. California State Auto. Assn*. (1993) 19 Cal.App.4th 761, 774.) If costs are put in issue, the burden is on the party seeking costs to justify them. (*Ibid*.) Allowable costs are set forth Code of Civil Procedure section 1033.5, and include filing, motion, and jury fees. (Code Civ. Proc., § 1033.5, subd. (a)(1).) To obtain costs, the prevailing party must file and serve a memorandum of costs. (Cal. Rules of Court, rule 3.1700(a).) Supporting documentation is not required if the initial memorandum of costs is verified, and supporting documentation is required only where the costs are put in issue by a motion to tax costs. (*Jones v. Dumrichob*

(1998) 63 Cal.App.4th 1258, 1267.)  A motion to tax costs must be supported by declarations where there is a dispute as to the nature or amount of particular costs.  (*County of Kern v. Ginn*, *supra*, 146 Cal.App.3d at pp. 1113–1114.)

### B.    Entitlement to Attorney Fees

Code of Civil Procedure section 1033.5 specifies the items allowable as costs under section 1032 and includes attorney fees as authorized by contract, statute or law.  (Code Civ. Proc., § 1033.5, subd. (a)(10).)  *Gunlock Corp. v. Walk on Water*, *supra*, 15 Cal.App.4th 1301 held that a noticed motion is not required for an award of attorney fees. (*Id.* at p. 1305.)  The legal basis of entitlement to an award of attorney fees is a question of law, reviewed de novo.  (*Exxess Electronixx v. Heger Realty Corp*. (1998) 64 Cal.App.4th 698, 705.)

With respect to attorney fees, Civil Code section 1717 provides that the prevailing party is the party who recovers greater relief on the contract.  (Civ. Code, § 1717, subd. (b)(1).)

We review the trial court's fee award for abuse of discretion.  "The trial court's decision will only be disturbed when there is no substantial evidence to support the trial court's findings or when there has been a miscarriage of justice."  (*Frei v. Davey* (2004) 124 Cal.App.4th 1506, 1512.)  The trial court also has broad authority to determine what constitutes a reasonable amount of fees in a given case.  (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)  An """"experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong["]'—meaning that it abused its discretion."  (*Ibid*.)

### C.    Analysis

Here, plaintiffs failed to support their factual assertions regarding the necessity of PCCA's costs by a required declaration, and therefore technically the trial court erred in relying on plaintiffs' contentions in striking PCCA's costs.  Nonetheless, the trial court had before it the plaintiffs' reasoning why the costs should be stricken when it made its ruling

striking costs as unrecoverable, and could have required a declaration and then struck the costs in any event. Thus, we fail to see the prejudice to PCCA in the lack of a declaration to support the motion to tax. Further, the trial court ruled correctly in finding the stricken costs were not recoverable. (Code Civ. Proc., § 1033.5, subds. (a)-(c).) With respect to the fees, the attorney fees clause of paragraph 10.3 of the CC&R's covers "any action" to enforce the covenants and conditions of the CC&R's by the board or any constituent homeowner. Plaintiffs contend here that the PCCA board failed to properly levy assessments (either by creating an inadequate reserve or diverting non-homeowner costs to the association through improper levies), which would violate the CC&R's in addition to violating fiduciary duties. We agree with the trial court plaintiffs' claims against PCCA are not covered by the language of paragraph 10.3 because that language, which governs administration of the CC&R's of PCCA, is not sufficiently broad to cover breach of fiduciary duty claims.

## DISPOSITION

The judgment and the order granting plaintiffs' motion to tax costs are affirmed. The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


MALLANO, P. J.


CHANEY, J.


30